Welcome to the last day of our panel sitting here in Atlanta. It's been a busy week and there's another panel going on in room 339. Before we start, Judge Grant and I want to again thank Judge Eugene Seiler from the Sixth Circuit for being with us here all week. He's a frequent visitor to the circuit and has helped us out for many, many years. He's had a very distinguished career. He served not only our country in the Navy, but he was also a U.S. attorney, a U.S. district judge before going on the Sixth Circuit where he has served with distinction. And we're very glad and honored that he's here to help us out this week. Judge Grant Glad to be of service. Thank you. Judge Seiler With that, we're ready to begin. You're familiar with our lighting system. When the yellow light goes on, that means that your time is drawing to a close. So, bring your remarks to a finish. If we take you beyond the red light, then don't worry. Just keep going. You're on our time and not yours. And with that, we will begin with United States v. Cingari. And I think, Mr. Chase, you're up first. Okay. May it please the Court. My name is Dane Chase and I'm here on behalf of Rosa Cingari. This case raises two separate issues, one of which is a sentencing issue and the other is a forfeiture issue. Mr. Burns will be addressing the forfeiture issue and will adopt his arguments in full on that matter. With respect to the sentencing issue, the issue can really be boiled down to a question of whether the sentencing guidelines commentary can add language to a sentencing guideline, which simply isn't there. The sentencing guideline at issue is the guideline for the offense of mail fraud. The guideline contains a cross-reference that states that if the conduct of the conviction – I'm sorry, if the conduct set forth in the count of conviction establishes an offense specifically governed by another guideline – to apply that guideline. In Ms. Cingari's case, there's no question that the offense of conviction establishes the offense of making a material false statement in an immigration application. So, under a plain reading of the guideline, the immigration guideline should actually apply. Can I ask you an overall theoretical question? Certainly. How does that work with grouping? It seems to eliminate the grouping principles of the guidelines altogether because under normal grouping principles, you take a certain set of related offenses, and if they are related enough within the guidelines, then you usually take the higher offense level in the grouping analysis, right? And you start with that. So, if you do that with these offenses, at least in grouping purposes, you'd start with 2B1.1. Correct. But if you're correct, that grouping is rendered irrelevant or insignificant because the 2B1.1 becomes the 2L2.1 that you contend should apply. So, that's just a theoretical issue that I'm having a little bit of trouble with. Well, it doesn't render it moot. In fact, you're still applying 2B1. It's just that 2B1 is now being redirected into – I believe it's 2L. I'm sorry. I can't remember the exact guideline letters. So, in effect, you're still applying 2B1. It's just that it's now morphed itself by the cross-reference into the guideline for the immigration documentation. And that brings us to the issue of what the government's point is, is that under the guidelines commentary, you should be looking at which offense is more aptly covered by the conduct. And the problem with that is that under United States v. Fulford, as cited in Ms. Singari's briefs, it clearly states that the guidelines commentary is what governs. I'm sorry. The guidelines itself is what governs. If the commentary is inconsistent with the guidelines, you're supposed to apply the guideline itself. The language of Fulford actually states that if adding language to the guideline would be an improvement, it doesn't matter. It's not the court's function to modify the guideline to improve it. So, in this case, I understand going back to what Judge Jordan just said about the grouping issue. It may well be that it would be an improvement to read that aptly language into the guideline, but that's not what the guideline says, and it shouldn't be added to it. That should be the Sentencing Commission's job and task to amend the guideline to add that language if they see fit. What's your best case in line with what you're proposing here today? I would say the Fulford case because it contains the language that says that you're not permitted to add that word, not permitted to add aptly to the guideline because it simply isn't there. And if it's not there, then if you read the guideline itself strictly as it's written, there's no way around applying the immigration guideline. You have to add that word aptly in order to avoid that, and that word simply is not in the guideline. And your position would be that under subsection C of the guideline itself... Under the Crossref, that's correct. Right. The conduct set forth in the fraud charges establishes the immigration offense... That's correct. ...for making the false applications. That's correct. Right, okay. All right, thank you very much. We appreciate it, Mr. Chase. Mr. Burns. Good morning, Your Honors. May it please the Court. I'm Thomas Burns, and I represent Mr. Singari. I'll be addressing both issues. The government is inviting you to rewrite the plain language of the Crossreference to conflate the meaning of the phrases specifically covered by and more aptly covered by, and to misplace reliance on cases like Baldwin and Acame, which are an apposite, instead of cases like Janow and Cuckoo. And we're asking you to decline that invitation. Judge Jordan, you asked about grouping, and Judge Seiler, you asked for the best case. As to the grouping issue, our position would be grouping is a general principle, and this is a specific provision, and you have to look at the plain language of this specific provision. All we can look at is the plain language, but perhaps the intent is let's take stuff out of 2B1.1 because we've got the loss calculation and all these different enhancements that could apply, and maybe that's not working. But I don't really know what the rationale is. It's just we look at the plain language, and the plain language here indicates that you look at the Crossreference, and our position is we win under the Crossreference. Judge Seiler?  Yes. Okay. Both. Both. Both. Correct. So, the best cases, it's not just Fulford. It's also Janow and Cuckoo. Cuckoo is a 1997 decision by Judge Black. Janow is a Second Circuit decision, and Janow is the one that says, well, there's a difference between the language of the Crossreference and the language of the application note. Does Baldwin cause you any problems, whether rightly or wrongly decided? I don't think so, because it's deciding the issue on a different premise. It's saying, well, we go straight to the application note, and you lose under the application note. We don't really have a dispute with we lose under the application note. We say that you don't get to the application note in the first place. So, let's look at the plain language of the Crossreference itself. It actually says, apply the Crossreference, go to the other guideline when the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline. There's a little bit of a rhetorical switcheroo here that's in the government's position, where it would like to flip where the words conduct and offense are placed. So, then they say, well, because they would like the guideline to say the offense set forth in the count of conviction is established by conduct specifically covered by another guideline. So, they say, well, you don't get past the guideline, because there's additional conduct in the count of conviction that you can't account for. But that's not how the guideline's actually written. It's does the conduct establish the elements of an offense? And we establish the elements of the offenses. That's the day case. It says, well, if the facts establish the elements of the offense, then that's satisfied. Is it fair to say that although it may not encompass your entire argument, it's sort of a lesser included theory? In other words, if the conduct set forth and it's necessary for the fraud conviction that triggers 2B1.1 covers what might be a lesser included offense that's covered elsewhere in the guidelines, then you have to apply that other guideline. I understand your question. Yes, I would say that that is a way of putting our argument. I know it doesn't cover the entire panoply of the argument, but in this case it would. I think that's a way of expressing the point. And so it's like if you have a universe of facts, A through E, and those facts, A through C, establish some other offense, then you go to the guideline for that other offense. And that's true whether or not there were convictions for both types of offenses, because you just look to the facts. They're alleged in the indictment to establish the count of conviction. So even if the government hadn't charged immigration fraud here, our position would still be you go to the immigration fraud guideline because the facts of the offense of conviction establish that other offense. Let's talk a little bit about this conflating the meanings of the two phrases. The Janow case is the one that says specifically covered by means something different than more aptly covered by. Another place that you could look to for that point is the Merriam-Webster Dictionary or any dictionary. These two phrases, specifically and aptly, don't mean the same thing. Janow says, well, one is substantially broader than the other. And if you've got that kind of plain language difference between the two, the Fulford case says you have to just apply the guideline and you don't go to the commentary. Our unpublished decision in Assim, if that's the correct pronunciation, cuts against you, right? No, I think for the same reason that Baldwin doesn't. It's assuming that the commentary is the rule that applies and we're disputing that portion of it. Now, it's a factually very similar case, but that appellant didn't raise the argument that we're raising here. That's clear from both the opinion and I pulled the briefs. They didn't make that argument. So we think it's both distinguishable. And then, of course, it's unpublished, so it's not binding precedent on you. And you're free to make this decision on a blank slate. And then our final backstop position, of course, is the rule of lenity. It's not the rule of lenity argument that's foreclosed by Baldwin because Baldwin says there's no rule of lenity problem between 2B1.1 and 2L2.1. That's not our argument. We're saying there's a difference between the cross-reference and the application note, and then you have to apply the rule of lenity. So that's our sentencing argument. The other issue in this case is the forfeiture issue, and the Supreme Court decided the Honeycutt case, and that's created a big problem in criminal practice because a lot of people were just letting these forfeitures go through, join several. This is what the scheme got. Boom, here you go. And then Honeycutt came down after the judgment was entered and while this case was pending. So a couple of issues, like what's your standard of review? Under your prior panel precedent, it's plain error. We disagree with the prior panel precedent, but you're bound by it, so that's the standard you have to apply. Why is this plain error here? Isn't it a different statute? It's actually not. So there's two statutes that are at play here. There's 981A1C and 982A6, under both of which the forfeiture is entered. One of those statutes, 981A1C, doesn't contain the directly or indirectly obtains language, which is what Honeycutt was hanging its hat on. The other statute that the forfeiture was entered, 982A6, does contain the same language as Honeycutt. So it's just indistinguishable. And there's another point, which I'd raised in my reply brief. It's page 15, note 9. I said, well, the government's not challenged this, so they've abandoned that argument in their brief, according to Judge Jordan's opinion in La Grasta and Chief Judge Carnes' opinion in Hamilton Schools. So that's not really before you. But getting to your question, which is where's the plain error? So we're saying there's no factual findings here made about apportioning, or not even apportioning, but what was personally obtained by each defendant. So that's an error. It was plain because Honeycutt says that you had to do it. The other two elements of the test are affecting your substantial rights and reputational harm to the judiciary. Substantial rights are affected here. It's just a reasonable probability. And we say that that's probably, it's reasonably probable because there's some facts in the record about, you know, Rosa handled the, or sorry, Mrs. Singari handled the finances, including bills and taxes. Mr. Singari just ran errands, Fesher cooked food, and took care of the yard. Apart from their roles in the conspiracy, aren't they differently situated than the Honeycutts by virtue of being a married couple? No, because we don't have findings about whether, this is my point about the substantial rights here. We don't really have findings about whether they were treating these proceeds as jointly obtained or not, and just how they were doing it. So we don't know if they had separate accounts and what was really going on. And that's the factual finding that we say needs to happen here. So one way of putting this is, is this like Carlisle I or Carlisle II? And our position is this is more like Carlisle I because there the court, this court just said, well look, district court, Honeycutt came out and you figure this out in the first instance. So what we want here is just a hearing to determine who did what and what was personally obtained. Because right now we think the judgment doesn't comply with Honeycutt. And there's a substantial probability, sorry, a reasonable probability that the forfeiture judgment would be different because of certain facts about Mr. Singari's involvement in the scheme, which was minimal compared to Mrs. Singari's. Can a reasonable probability really be what establishes plain error? Don't we need more than that to find plain error? No, that is exactly what you need to find. There's the four parts of the test. The error is plain. We say the error is plain under Honeycutt. And then for substantial rights, it's just a reasonable probability. So is there a reasonable probability that the result would be different? So it's not like absolute certainty. It's just a reasonable probability. You're not saying there's a reasonable probability there's an error. You're saying there's a reasonable probability that the rights would be affected. I'm not sure I understand that distinction. Usually, usually to show that substantial rights are affected, you've got to show, whatever language is appropriate, some effect on the outcome. Oh, yeah, yeah. And that's what I'm saying. So in other words, there's a substantial probability that the forfeiture judgment, if it complied with Honeycutt, would look different from the way it looks now. And our argument is, yes, there is a substantial – I'm sorry, I keep misstating that. There's a reasonable probability that it would look different if there was fact-finding because Mr. Singari's role was far more limited than Mrs. Singari's role. So he wants to put all the blame on his wife, right? That's essentially what you're arguing, right? She did it. I just talked about it. That's a fair assessment of what would likely occur during a remand hearing. There's also the aspect that neither of your clients is really fighting about joint and several liability. What you're fighting about is the amount of joint and several liability because it inures to both of their benefits for the liability, whatever it is, to be joint and several for both of them, right? If both of them were hit with $300,000, each one of them would want that liability to be joint and several. I disagree, actually. What they would actually like to happen, and I think it's – well, what I think they would actually like to happen is one of them have the lion's share of the liability because then – Oh, no, I know, but that's not my hypothetical. Okay. If both of them were hit with the same amount, whatever that amount is, if the amount were the same for both, whether it's $100,000, $200,000, or $700,000, if that amount is equal, joint and several liability is the desirable outcome for each of them because as one pays, the liability for the other gets reduced. Yeah, I think – I guess that was sort of what happened in Carlisle, too, but it's like an offset type of provision. And so, yeah, like they would like an offset, like if one pays, then it goes down for the other if they lose this primary argument. That's like a secondary argument, but the primary thing that they would like to occur is that the lion's share of the liability go on to one of the defendants, a minimal amount go on to the other defendant, and then they pay down the minimal amount and they can go on as a happily married couple despite what takes place at the remand hearing and be able to live their lives by like renting apartments or buying a house or whatever because they can do that through one of the married couple's names and not the other. So, that's kind of like practically the end goal of this argument. All right, Mr. Burns. Thank you very much. You both reserved your time. Thank you. Ms. Gershow. Good morning, Your Honors, and may it please the Court. I'd like to start by addressing the Cingaris Guidelines argument. They said there's no dispute that we lose under the cross-reference, but unfortunately for them, Baldwin already said that in this exact factual scenario, the commentary controls. And now they say, well, Baldwin didn't consider the proper issues, but as this Court is well aware, the Court in Smith said, we categorically reject any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time. There's a substantial argument that, although you may be right about that, that Baldwin is incorrect. If Baldwin is incorrect, which I would argue it's not, then the only remedy this Court has is to take Baldwin on bonk. Well, I completely understand that, and I think you're absolutely right about that. But why should commentary that is arguably in conflict with a guideline take precedence over the guideline? Well, first, of course, because Baldwin says so. But in this case, I would say there is no conflict between the plain language of the guideline and the commentary. Because, first of all, every case that they cite about the commentary not governing if it's in conflict with the language of the guidelines with the exception of an out-of-circuit case has found that the commentary is authoritative. They rely on Fulford, but Fulford said there's no conflict between the guideline and the commentary. And in Stinson, which is the Supreme Court case, what the Court in Stinson was saying is sometimes courts are not applying the commentary when there's not a plain conflict between the commentary and the guidelines. And here in our briefs, we set forth why there is no conflict between the plain language of the commentary and the cross-reference. And we can assume that the Court in Baldwin, when it applied the commentary, it was well aware. Judge Carnes was on both the panel that wrote Fulford and the panel that wrote Baldwin. This court knows how to apply the commentary in connection with the guideline. And so the assumption in Baldwin is that the court said there is no conflict between the plain language of the guideline and the commentary, and therefore the commentary is authoritative. And, again, when you interpret the plain language of the guideline, you have to start by interpreting it in connection with the commentary. Because as the Supreme Court said in Stinson, the commentary is what the Sentencing Commission believes that their guideline means. And here when you – What do you do with – or how do you figure out the meaning conjunctively of specifically covered and aptly covered? Well, I think that you have to look at the guideline as a whole, which says the conduct specifically charged in the count of conviction establishes an offense specifically covered by another guideline. And here, if you look at all of the conduct of this offense, it goes well beyond an offense that is specifically covered by another guideline. This is not – That's not the language of the guideline. You could have a guideline that says – it could be elements-based. The guidelines could have been elements-based. In other words, a sort of Blockberg or double jeopardy elements test. And if the other guideline is only a lesser included, then you don't apply it. But that's not the way the language – and then I'll stop because I know your argument is that Baldwin binds us. But that's not the way the guideline reads. I would respectfully disagree that the guideline is ambiguous as to how it's to be read. And to give you an example, let's say that there was a mail fraud scheme, a giant mail fraud scheme involving loss to hundreds of victims and millions of dollars of loss. And one aspect of that offense involved one filing of a false immigration document. So if you applied the sentencing guidelines under the fraud and deceit guideline, their guideline would have been life. And, again, consider that when this cross-reference was written, the guidelines were not advisory. They were mandatory. And so he would have faced mandatory life under the fraud and deceit guideline but 30 to 37 months under the immigration document guideline. It can't be the case when you interpret what the sentencing guideline was saying in connection with the commentary that that's what the sentencing commission intended. But, again, I do rest on Baldwin and say that Baldwin controls here. And so unless there are other questions, I'll turn to the Honeycutt issue. So they start by saying – first of all, they say Mrs. Singari simply adopted the arguments of Mr. Singari. As you've noted, there's an inherent conflict between the interests of Mr. and Mrs. Singari. So Mrs. Singari cannot show she was substantially prejudiced simply because Mr. Singari was substantially prejudiced. But they both stand in the same shoes. If the argument survives, the argument is that you need findings. And they both stand in the same shoes with regard to lack of findings. They do stand in the same shoes with lack of findings, which I will disagree with about the lack of finding addressed in a second. But in terms of substantial prejudice, she has to show that the outcome would have been different if the court had taken into consideration and made those findings. And Mr. Singari's position is basically she was liable for all of it. So if that's Mr. Singari's position, then under his position she can't establish substantial prejudice. But let me go back to the no findings issue. The district court specifically found that based on the evidence presented at trial, as a result of the conspiracy and fraud offense, the defendants received criminal proceeds in the amount of $740,880. Now, so that finding, when they said they received, received, acquired, obtained, those are all synonyms if you look in the dictionary definition of received and the way that the Supreme Court defined obtained and acquired in Honeycutt. So she found, the district court judge found, that the defendants both received the entire sum of the proceeds. And Honeycutt does not plainly extend to, in the facts of this case, to where defendants jointly obtained the same proceeds. Honeycutt just says a defendant cannot be forced to forfeit property that he never personally obtained. But here the government's position is that both parties personally obtained the entire amount of proceeds of the offense. And the reason for that is they were jointly conducting the fraud. Although Mr. Singari likes to paint himself as a minor participant, the PSR says that he filled out at least 200 of these false immigration applications. The PSR also doesn't show any other source of income for Mr. Singari during this time period. And the testimony at trial was that there were four bank accounts into which cash was being deposited daily. One was an account for the business. One was a joint account that was owned by Mr. and Mrs. Singari. And two accounts belonged to their children. And so there's just nothing on this record that shows that he didn't have access to and personally benefit from all the proceeds of this offense. They were traveling to Italy. They were traveling to Siesta Key. They were going to Disney World. How was that being paid for? It had to have been paid for out of the proceeds of these offenses. And certainly when the burden is on them to show plain error, they cannot on this record show that either one of them didn't personally obtain and benefit from the proceeds of this offense. Is it your position that this was plain error or not plain error? It's our position this is plain error. It's what? It's plain error. It is plain error. Okay. In spite of the fact of these other cases that you've said in your letter? I'm sorry? In spite of the other cases that you've said in your letter? Yes. So our position that it is plain error not because of the fact that there's a circuit split over 981A1C. Our position that it's plain error because Honeycutt doesn't plainly extend to property that is jointly acquired by co-conspirators, especially married co-conspirators who are jointly benefiting from the proceeds of the offense. Your position is that Honeycutt applies to more than the forfeiture statute that was at issue there, generally speaking. Correct. But it doesn't necessarily control the outcome in a case like this one. Correct. And again, he says this is like Carlisle I. But again, Carlisle I was on preserved error review, so it's just not applicable here. The nail in the coffin for them here is that this is plain error review. The burden is on them, not us. So the absence of a showing in the record about how the proceeds were divided means that they cannot show plain error. It's not our burden to show how the proceeds were divided. Unless the court has any further questions, I'd submit on our briefs. All right. Thank you very much. Thank you very much. Just very briefly concerning the Baldwin case, the defendant in that case argued it under the aptly theory. The court decided it under the aptly test. There was no dispute as to whether that test applied. So there is no binding precedent as concerning whether the proper test is the aptly test or whether you should just be looking at the play language of the guideline. So it would be our position that Baldwin in no way has decided this issue, and this court is in no way bound by it. Is it that Baldwin didn't decide the issue or that Baldwin didn't decide the issue considering the same arguments that you're making? They did not decide the issue, period, because nobody made an argument in that case concerning whether an aptly test should be applied, whether the court should even be weighing the facts of the case. So it would be our position that Baldwin didn't address the issue that we've raised, period. And so there's no binding precedent from this court or any court, frankly, on this precise issue. All right. Thank you very much, Mr. Chase. Judge Grant, I think the way to express that concept is that Baldwin assumed without deciding that you go straight to the commentary. So that's why it's not binding here, because that issue, that legal issue, has just not been decided by a binding precedential opinion of this court. The decision that does address it is Janel. It's out of circuit, but it explains why there's a conflict between the guideline and the commentary. And so that's one of the cases that we're hanging our hat on. Another one that we mentioned is Cuckoo. And Cuckoo involved a very similar situation, but the difference between that case and this case now is that the government's kind of changed its charging theory. So it's not just the immigration fraud perpetrated on the government, but there are victims here who are the illegal aliens that were paid out money, and they're the victims of the wire fraud. The other point I want to make is, well, I guess two points about forfeiture. So one is that there were factual findings made. I think those factual findings pertain to what the scheme obtained, not to what each defendant personally obtained. That still hasn't been done, and that's the type of evidentiary hearing that we would be asking for on remand. Just figure out how you're going to divvy this stuff up. But under a plain error scenario, that might be enough. Might be enough in what respect? If you were operating in a situation where there were no findings whatsoever, you'd have a much stronger argument to make on that prong of plain error. But here there is a finding of sorts. It may not be exactly what Honeycutt requires, but there's something. You just think it's not enough. Yeah, I would say like sort of, kind of, but it's not really what Honeycutt requires. Our theory of what Honeycutt requires is you actually have to assign each dollar so it terminates in a specific defendant's pocket, and that's not been done here. It was a pre-Honeycutt judgment, and it just says, this is how much the scheme obtained. Here's your forfeiture order. It's joined several, and that's the end of the case. So what we're saying, you need to assign each of those dollars. And then the last point I want to make has to do with Carlisle I. Carlisle I did involve preserved error, except that the error there wasn't quite like a Honeycutt type of argument. There the defendant had argued in the district court, look, I had agreed only to a $600,000 forfeiture, and you've tagged me with $1.8 million, and that violates the excessive fines clause and some other provisions. So it didn't really involve a Honeycutt type of argument where it was like I was only responsible for this and my husband was responsible for this. It was just more like, you know, it was a plea agreement, and you've gone way above that. So it's not preserved in that sense, and still the court in Carlisle I said, well, look, we need to have findings according to Honeycutt. District court, please go do that. And then we had, you know, that hearing came up to Carlisle II. So that's what we're asking for, like the kind of ruling in Carlisle I. All right. Thank you very much, Mr. Burns. Thank you. Mr. Chase, Mr. Burns, we know that you were both court appointed for your clients, and we want to thank you not only on their behalf but ours for your service. We really appreciate it. Anytime. Thank you. Our next case is number 14.